### GALVESTON BAY CONSERVATION AND PRESERVATION ASSOCIATION

v.

### THE UNITED STATES ARMY CORPS OF ENGINEERS, et al.

#### No. CIV. A. G–98–228.

United States District Court,
S.D. Texas,
Galveston Division.

July 9, 1999.

James B Blackburn, Jr, Blackburn & Carter, Houston, TX, for Galveston Bay Conservation and Preservation Association, plaintiff.

Eileen T McDonough, DOJ, Environmental Defense Section, Washington, DC, Daniel Keys, III, U S Army Corps of Engineers, Galveston, TX, Wendy L Blake, U.S. Dept of Justice, Environmental Defense Section, Washington, DC, for U.S. Army Corps of Engineers, Eric R Potts, Togo D West, defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff, the Galveston Bay Conservation and Preservation Association ("the Association"), contends that certain Army officials and the U.S. Army Corps of Engineers ("the Corps") reissued permits under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, in violation of regulations which require the Corps to provide public notice and comment before making such a decision. Now before the Court are Plaintiff's Motion for Summary Judgment and Defendants' Response and Cross–Motion for Summary Judgment. For the reasons stated below, Defendants' Motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

### I. FACTS

The Corps issued two permits, pursuant to Section 404 of the Clean Water Act, to Marina Del Oro ("Marina"). The permits were issued in connection with the construction of a planned resort development on Smith Point in Chambers County, Texas. The first permit, issued in 1987, authorized Marina to perform certain dredging activities and to fill specified wetland areas ("the Dredging Permit"). The second permit, issued in 1991, authorized Marina to construct a facility in Kemah extending into Galveston Bay in order to operate a hovercraft system that will provide transportation between the resort and the Clear Lake area ("the Hovercraft Permit"). When issued, each permit was valid for three years.

Complications arose, primarily with financing, that prevented Marina from meeting the permit expiration dates. As a result, Marina sought and the Corps ap-

proved several permit extensions, most recently in 1997. Before approving a requested extension in 1994 for the Dredging Permit, the Corps provided public notice and sought public comment. In all other instances, the Corps approved the extensions without providing for public notice or comment. Under the Code of Federal Regulations, 33 C.F.R. § 325.6(d), the Corps is authorized to approve a permit extension without public notice or comment if the Corps determines that there have been "no significant changes in the attendant circumstances" since issuance of the permit.

The Association contends that in 1997 there had been "significant changes in the attendant circumstances" surrounding the Marina project, namely proposed additions to the Marina's project, passage of a Coastal Management Plan in Texas and the institution of the Galveston Bay Comprehensive Conservation and Management Plan, expansion of the Anauhac National Wildlife Refuge and creation of the Candy Abshier Wildlife Management Area, and the granting of approval for widening and deepening the Houston Ship Channel. The Association claims that these changed circumstances necessitated that the Corps provide for public notice and allow for public comment before approving the 1997 permit extensions. The Association therefore requests that the Court vacate the permit extensions and require the Corps to seek public comment before making a decision granting the permit extensions to Marina.

## II. STANDARD OF ANALYSIS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In the instant case, the parties have stipulated that judicial review be limited to the administrative record.

## III. ANALYSIS

The fundamental purpose of the Clean Water Act is to prohibit the discharge of pollutants without a permit. *See* 33 U.S.C. §§ 1311, 1344. In the case of wetlands, the Act prohibits discharge of fill material except pursuant to a permit issued by the U.S. Army Corps of Engineers. *See id.* The Corps is therefore responsible for issuing and enforcing permits. As the United States Supreme Court has stated: "considerable respect is due the interpretation given [a] statute by the officers or agency charged with its administration." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (quoting *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978)). The Supreme Court went on to state that "an agency's construction of its own regulations is entitled to even greater deference." *Id.* And specifically with respect to the Clean Water Act, the United States Court of Appeals for the Fifth Circuit has noted that "Congress has delegated substantial authority to the EPA administrator, and with respect to the dredge-and-fill permits, to the Corps, for the implementation of the [Clean Water Act]." *Avoyelles*

*Sportsmen's League, Inc., v. Marsh,* 715 F.2d 897, 911 (5th Cir.1983).

■ The Administrative Procedure Act, ("APA"), 5 U.S.C. § 706, sets forth the judicial standard for review of an agency decision. The APA provides that courts may set aside agency action found to be: (1)"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or (2) "without observance of procedure required by law." 5 U.S.C. § 706(2)(A),(B). The standard for review is deferential. In other words, the agency's decision "need not be ideal, so long as it is not arbitrary or capricious, and so long as the agency gave at least minimal consideration to relevant facts contained in the record." *Harris v. United States,* 19 F.3d 1090, 1096 (5th Cir.1994) (citation and footnote omitted). A reviewing court is not "empowered to substitute its judgment for that of the agency." *Bowman Trans. Inc. v. Arkansas–Best Freight Sys. Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (citation omitted).

■ In the instant case, the Association argues that in granting the contested permit extensions, the Corps violated 33 C.F.R. § 325.6(d) which states in relevant part:

> Requests for extensions will be processed in accordance with the regular procedures of § 325.2 of this part [Processing of Applications], including issuance of a public notice, except that such processing is not required where the district engineer determines that there have been no significant changes in the attendant circumstances since the authorization was issued.

The first step in the Association's argument is that this language establishes a presumption in favor of public notice that should only be overcome when the Corps first "gather[s] facts sufficient to rebut the presumption." As the Corps points out, however, the plain language of the regulation fails to indicate the application of any sort of presumption. The Association offers no case law or other support as evidence for its contention that a presumption exists which requires the Corps to compile a more extensive record justifying its decision than is required for other administrative decisions. The Corps, on the other hand, offers statutory authority demonstrating that when the EPA has chosen to establish a presumption, it has done so with explicit language. *See, e.g.,* 40 C.F.R. § 230.10(a) (stating that for projects that are not water dependent and are located in certain types of wetlands, "practicable alternatives ... are presumed to be available, unless clearly demonstrated otherwise.") Accordingly, the Court agrees with the Corps that the regulation at issue imposes no heightened requirements upon the Corps in justifying its administrative decision to proceed without public comment.

■ The Court now turns to the second step in the Association's argument, the question of whether the Corps' determination that there had been no significant changes in attendant circumstances was arbitrary and capricious. On June 18, 1997, Marina applied to the Corps for a three-year extension of both the Dredging and Hovercraft Permits. As recently as 1994, the Corps had sought and received public comment regarding the Dredging permit. In 1997, before approving the requested permit extensions, the Corps solicited comments on the proposed extensions from the relevant state and federal agencies, including but not limited to the U.S. Fish and Wildlife Service, the U.S. Environmental Protection Agency, the U.S. National Marine Fisheries Service, the Texas Parks and Wildlife Department, The Texas Natural Resources Conservation Commission, the Texas General Land Office, and the Texas Historical Commission. None of the entities contacted raised any objections to the permit extensions. The Corps then completed an Environmental Assessment and Statement of Findings ("EA") and concluded that public notice and public comment were not required before approval of the permit extensions because there

had been no significant change in the attendant circumstances since the permits had been issued. In the meantime, the Corps received correspondence from James Blackburn (now representing the Association), the Galveston Bay Foundation, and the Sierra Club, contending that because Marina had plans to eventually expand the project by adding new phases to the development, there was a significant change in attendant circumstances which required the Corps to allow for public comment. The Corps responded that the projects covered by the permits were "stand-alone projects" and were properly considered separately from any future development plans. The Corps then approved the permit extensions on October 28, 1997.

Mr. Blackburn, the Sierra Club, and the Galveston Bay Foundation requested that the Corps reconsider its decision to act without public notice, referring again to the additional phases of development and also referring to the Galveston Bay Plan, the Texas Coastal Management Plan, and the Houston Ship Channel Project as relevant changes in the attendant circumstances surrounding the project. At one point, the Corps held a meeting with members of those groups to discuss their concerns, but ultimately responded by reiterating that the Marina project as authorized was self-sufficient and additional phases would require separate permit applications, the issues pertaining to which would be addressed when those permits were sought. The Corps, having already discussed the permit extensions with the various agencies in charge of administering the relevant wildlife, habitat, and wetlands conservation plans, also requested that the concerned groups accompany any further requests for reconsideration with documentation demonstrating how they believed those plans would be affected by the Marina project. No such documentation was ever supplied.

To this date, the Association offers no documentation whatsoever, such as some type of environmental impact assessment, to demonstrate that the permitted project fails to comply with conservation plans or otherwise adversely impacts the surrounding environment. The crux of the Association's summary judgment argument is that the burden falls upon the Corps to conduct another extensive analysis of the impact of the Marina project to disprove the Association's unsubstantiated contentions that "attendant circumstances" have changed. However, given that relevant enforcement agencies have approved the permits, and the speculative future development of which the Association complains is not a subject of the permits at issue here, the Court cannot find that the Corps' decision not to conduct what would surely be an expensive and time-consuming reassessment of the Marina project was arbitrary and capricious as a matter of law.

In sum, the Association has offered no evidence to dissuade the Court from treating the Corps' evaluation of the permit extensions with the traditional deference accorded a regulatory agency charged with the enforcement of its own regulations. The Association has failed to establish that the Corps improperly construed section 325.6(d) or acted arbitrarily in concluding that there had been "no significant changes in the attendant circumstances since the authorization was issued."

IV. CONCLUSION

For the reasons outlined above, the Defendants' Cross–Motion for Summary Judgment is hereby **GRANTED** and the Association's Motion for Summary Judgment is **DENIED**. The Association's claims are **DISMISSED WITH PREJUDICE**. Furthermore, the parties are hereby **ORDERED** to file nothing further regarding the issues addressed in this Order, including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they may feel entitled, on any matter herein addressed, from the

United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

IT IS SO ORDERED.